**No. 25-1210**

# United States Court of Appeals for the First Circuit

DANTE A. DIFRONZO,
Plaintiff - Appellee,

v.

CITY OF SOMERVILLE; JOSEPH CURTATONE, Mayor;
DAVID FALLON, Chief of Police; BERNARD COTTER, Police Captain,
Defendants - Appellants.

On Appeal From A Judgment Of The District Court Of Massachusetts, Boston

**BRIEF OF DEFENDANTS - APPELLANTS,
CITY OF SOMERVILLE; JOSEPH CURTATONE, Mayor;
DAVID FALLON, Chief of Police; BERNARD COTTER, Police Captain**

Leonard H. Kesten, 1st Circuit Bar #36865
Alexander Kesten
Michael V. Glennon, 1st Circuit Bar #1215864
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
akesten@bhpklaw.com
mglennon@bhpklaw.com

Dated: September 29, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................... ii

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................2

     A.    Facts as Presented at Trial ...................................................2

     B.    Motion for Summary Judgment Filed by the Defendants...................11

     C.    Additional Procedural History ..........................................15

SUMMARY OF THE ARGUMENT ......................................................18

ARGUMENT ...................................................................................21

     I.    THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER EVIDENCE AND AWARD DAMAGES BASED ON POST-JULY 1, 2021 CONDUCT BY MAYOR CURTATONE, MAYOR BALLANTYNE, AND CHIEF FEMINO, WHICH WAS OUTSIDE THE SCOPE OF THE COMPLAINT. .................................................................21

          a.    The issue was not tried by consent under Fed. R. Civ. P. 15(b)(2) ...................................................................26

          b.    The Defendants did not have an opportunity to conduct discovery, engage in motion practice, or otherwise litigate the claims for causes of action after July 2021 and were prejudiced by their admission. ........................................33

II.   THE JURY VERDICT AND JUDGMENT MUST BE VACATED DUE TO THE ERRONEOUS ADMISSION—OVER OBJECTION—OF AN ARBITRATOR'S OPINION ISSUED YEARS AFTER THE OPERATIVE FACTS PLEADED, WHICH CONSTITUTED INADMISSIBLE HEARSAY, IMPROPER EXPERT TESTIMONY, AND WAS MORE PREJUDICIAL THAN PROBATIVE; EVEN IF ADMISSIBLE, THE COURT FAILED TO APPLY THE REQUIRED DISCRETIONARY FACTORS, AND THE EVIDENCE IMPROPERLY SUPPLANTED THE JURY'S ROLE AS FACTFINDER. ...................................................35

    a.   Hearsay Fed. R. Evid. 801 .......................................................37

    b.   The Arbitration Decision Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury and Should have Been Excluded Under Fed. R. Evid. 403 .............39

    c.   Jury Instruction on Arbitration Decision was Misleading and Incorrect as a Matter of Law ............................................41

III.   THE DENIAL OF THE DEFENDANT'S MOTION FOR A NEW TRIAL WAS AN ABUSE OF DISCRETION ..........................43

CONCLUSION ...............................................................................................45

CERTIFICATE OF COMPLIANCE .......................................................46

CERTIFICATE OF SERVICE ..............................................................47

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**

*Alexander v. Gardner-Denver Co.*,
　415 U.S. 36 (1974)................................................................36, 42

*Antilles Cement Corp. v. Fortu*,
　670 F.3d 310 (1st Cir. 2012) ............................................... 26-27

*Armstrong v. Manzo*,
　380 U.S. 545 (1965)................................................................23, 24

*Boddie v. Connecticut*,
　401 U.S. 371 (1971)......................................................................25

*Brady v. Maryland*,
　373 U.S. 83 (1963)..............................................................*passim*

*Davignon v. Clemmey*,
　322 F.3d 1 (1st Cir. 2003) .......................................................41, 43

*Doral Mortg. Corp.*,
　57 F.3d 1168 (1st Cir. 1995) .................................................27, 33

*Eller v. Trans Union, LLC*,
　739 F.3d 467 (10th Cir. 2013)......................................................27

*Goldberg v. Kelly*,
　397 U.S. 254 (1970)......................................................................25

*Hayes v. Town of Dalton*,
　2025 WL 918684 (D. Mass. 2025) .........................................37, 39

*Herwins v. City of Revere*,
　163 F.3d 15 (1st Cir. 1998)..........................................................25

*In re Crawford*,
　841 F.3d 1 (1st Cir. 2016) .......................................................26, 27

*Interstate Litho Corp. v. Brown*,
    255 F.3d 19 (1st Cir. 2001) ...............................................................44

*Jones v. Cargill, Inc.*,
    490 F. Supp. 2d 989 (N.D. Iowa 2007)...........................................40

*Lech v. von Goeler*,
    92 F.4th 56 (1st Cir. 2024) ...............................................................35

*Lobster 207, LLC v. Pettegrow*,
    2024 WL 4826885 (D. Me. 2024) ....................................................39

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)..........................................................................26

*Mack v. Great Atl. & Pac. Tea Co.*,
    871 F.2d 179 (1st Cir. 1989) .............................................................24

*Marrero v. Goya of P.R., Inc.*,
    304 F.3d 7 (1st Cir. 2002) .................................................................44

*McDonough v. City of Quincy*,
    452 F.3d 8 (1st Cir. 2006) .................................................................35

*Moore v. Sequeira*,
    2024 WL 1013301 (D. Conn. Mar. 8, 2024) ........................... 39-40

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..........................................................................25

*Peralta v. Heights Med. Ctr., Inc.*,
    485 U.S. 80 (1988)......................................................................23, 24

*Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
    425 F.3d 67 (1st Cir. 2005) ...............................................................37

*Ramirez v. Debs Elias*,
    407 F.3d 444 (1st Cir. 2005) .............................................................35

*Rodríguez v. Doral Mortg. Corp.*,
    57 F.3d 1168 (1st Cir. 1995) ....................................................................27, 33

*Romano v. U-Haul Int'l*,
    233 F.3d 655 (1st Cir. 2000) ..........................................................................41

*Ruiz Rivera v. Pfizer Pharms., LLC*,
    521 F.3d 76 (1st Cir. 2008) .............................................................................33

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
    161 F.3d 77 (1st Cir. 1998) .............................................................................35

*United States v. Occhiuto*,
    784 F.3d 862 (1st Cir. 2015) ..........................................................................35

*Vasquez v. Lopez-Rosario*,
    134 F.3d 28 (1st Cir. 1998) .............................................................................37

## RULES:

Fed. R. Civ. P. 15......................................................................................26, 28
Fed. R. Civ. P. 56...............................................................................................12

Fed. R. Evid. 403 ......................................................................................20, 39
Fed. R. Evid. 801 ...............................................................................................37

## STATEMENT OF ISSUES

I.    The district court committed reversible error by permitting the jury to consider evidence, assess liability, and award damages based on actions taken by Mayor Curtatone, Mayor Ballantyne, and Chief Femino after July 2021—conduct that was not alleged in the operative complaint. Specifically, the Plaintiff's placement on leave during this period was not part of the claims presented for adjudication.

As a result of this error, the jury awarded $300,000 for emotional distress and $200,000 for lost compensation stemming from conduct that fell outside the scope of the pleadings and discovery. These awards must be vacated. Moreover, because this improperly admitted evidence likely tainted the jury's determination of liability and damages on the claims that were properly before it, the entire verdict and damages award should be set aside.

II.    The district court erred in admitting into evidence an arbitrator's opinion issued years after the operative events alleged in the complaint. Appellants objected to this evidence at trial. Even assuming the court had discretion to admit such evidence, it failed to consider or apply the factors that courts are required to weigh when determining whether to admit arbitral decisions. This failure alone warrants reversal.

1

In addition, the jury instruction regarding the arbitrator's decision, and the related testimony about non-party conduct, improperly expanded the scope of the claims presented in the complaint. The arbitrator's decision constituted inadmissible hearsay, was substantially more prejudicial than probative, and amounted to expert opinion testimony that could not be subjected to cross-examination. Its admission supplanted the jury's proper role as factfinder and usurped the jury's responsibility for determining liability. For these reasons, the verdict and judgment must be vacated in their entirety, and a new trial ordered.

<strong><u>STATEMENT OF THE CASE</u></strong>

## A.    Facts as Presented at Trial

The Plaintiff, a former police detective for the City of Somerville ("City"), brought claims against the City, its former Mayor Joseph Curtatone ("Mayor Curtatone"), its former Chief of Police David Fallon ("Fallon"), and a former police captain Bernard Cotter ("Cotter"), arising out of his May 8, 2021 termination. RA I at 22-39. The Plaintiff asserted that he was unlawfully terminated in violation of his First Amendment rights, and that his contractual and business relationships were interfered with because he sent a letter to the mayor on October 30, 2017, identifying what he believed to be issues of corruption within the department. RA I at 26, 35. As a preliminary matter, it is impossible that the

2

Plaintiff was terminated in response to his letter as Chief Fallon had recommended his termination on May 31, 2017, four months before his letter was sent. RA I at 30, 85.

At trial, it was uncontested that the Plaintiff had relied on a violent "street source" Jonathan Machado ("Machado") to help him locate suspect Henry Alvarez ("Alvarez"). RA II at 539-545. The Plaintiff had been trying to locate Alvarez because the Plaintiff believed Alvarez had participated in a break-in. RA II at 622-625. It was uncontested that Machado informed the Plaintiff that Machado was also looking for Alvarez because Alvarez had stolen drugs from Machado. RA II at 794, 801. Machado told the Plaintiff that he intended to harm Alvarez when he located him. RA II at 802. Despite this information, the Plaintiff enlisted Machado, making him "an extension of [the Plaintiff]" to assist him in the search. RA II at 758. The Plaintiff and Machado traded texts about locations where Alvarez might be located and took turns checking these locations and reporting back to each other. RA II at 771. After a couple of days of joint searching, Machado was able to locate Alvarez at one of the locations that was provided by the Plaintiff and attacked him with a machete. RA II at 779.

It was also uncontested that, before the Plaintiffs decided to rely on Machado to locate Alvarez, the Plaintiff had reviewed three police reports concerning Machado and his prior suspected illegal activities. RA II at 630-631,

3

765-766. For example, Plaintiff reviewed reports relating to Somerville Police stopping Machado and subjecting him to field interrogation or observation reports. *Id.* In each of these three encounters with the police, Machado was carrying knives, and in two of the encounters, the knives were confiscated due to their illegally large size. *Id.*

Even though the Plaintiff was immediately assigned to investigate the attack on Alvarez, which occurred on March 2, 2015, for fourteen days he withheld his communications with Machado from his superiors, the department, and the District Attorney's Office, which consisted of calls and texts with Machado and knowledge that Machado was looking for Alvarez prior to the stabbing. RA II at 786-787, 790-791, 809. The Plaintiff first mentioned Machado when writing a police report on March 16, 2015 where he described a phone call between them, while omitting any reference to the text messages where the Plaintiff provided Machado with the address of Alvarez. RA II at 653-654. In the report, the Plaintiff describes a telephone conversation that he had with Machado on March 2, 2015 and wrote that he told Machado that he could not elaborate on Alvarez's whereabouts, saying nothing about the texts or about providing Alvarez' potential address to Machado. RA II at 646, 653-654.

Months later, at the encouragement of the Assistant District Attorney, the Plaintiff sought and obtained a search warrant for Machado's phone, which he

seized. RA II at 668, 806.  Following the seizure, the Plaintiff learned that the

Somerville Police did not have the equipment required to conduct an extraction[1] of

this particular phone and he would have to give up the phone to the state police for

extraction. RA II at 720-721. As a consequence, the Plaintiff brought the phone to

the Massachusetts State Police, which did have the right equipment. *Id.*  The State

Police Trooper who conducted the extraction believed that he had discovered a co-

conspirator to the attack on Machado when he found the texts between the Plaintiff

and Machado. RA III at 1237. After investigating the owner of the phone number

whom the Trooper believed to be an accomplice, the Trooper learned that this

number belonged to the Plaintiff. RA III at 1238.

The text messages between DiFronzo and Machado as they pertain to

locating Alvarez read, in pertinent part:[2]

> Machado: Raul might be hiding him idk [I don't know] were raul
> lives. I'm loosing my leads. Clocks gunna run out for henry
> [Alvarez] soon. I'm up an out lookin right now for him
> DiFronzo: 9 Alston Street, Raul's house. Let me no, I want his
> photo!
> …
> Machado: They won't tell u where he is but they'll tell me trust
> me. U can't touch em but I can
> DiFronzo: Do what you got to do he's with his girlfriend house
> a shithole

---

[1] Extraction is the terminology used to describe the execution of a search
warrant to retrieve data from a cell phone by a forensic examiner.

[2] The full text message conversation between DiFronzo and Machado is
available in RA IV at 1630-1631.

> …DiFronzo: The dudes running out of life lines! I'll grab him
> Machado: Please do
> Machado: an bring him to me
> DiFronzo: For A small finders fee of course! RA III 1005-1007.

The Trooper who discovered the texts was so concerned when he learned that the Plaintiff had been working with Machado to locate Alvarez, that the Trooper immediately notified his supervisor of the discovery. RA III at 1238. The Supervising Trooper then notified the Middlesex District Attorney's Office ("MDAO") and the Somerville Police Department. RA III at1239.

The Middlesex District Attorney was outraged at the Plaintiff's failure to disclose this critical information and ultimately issued a *Brady*[3] letter, stating:

> During the course of an investigation into a home invasion, we learned the following facts. On February 28, 2015, Somerville Police Detective Dante DiFronzo spoke with a confidential informant ("Cl"). The CI told Det. DiFronzo that an individual ("the Individual") had recently stolen marijuana from him. Detective DiFronzo knew that the CI had a violent criminal past and that the CI was looking for the Individual. The CI told Det. DiFronzo that he intended to harm the Individual. RA II at 823.
>
> Detective DiFronzo, with this knowledge, actively assisted the CI in locating the Individual by providing information to the CI regarding the Individual's whereabouts. After receiving this information from Det. DiFronzo, the CI participated in a home invasion on March 2, 2015, in which the Individual was stabbed multiple times with a machete requiring hospitalization and surgeries.

---

[3] "Brady letter" as referenced throughout, indicates a notice issued by the Middlesex District Attorney's Office in compliance with *Brady v. Maryland*, 373 U.S. 83 (1963).

The Commonwealth is also aware that Detective DiFronzo knowingly made material omissions in police reports that were submitted in connection with the investigation of the home invasion. RA IV at 1537.

As a result of the Plaintiff's actions and the *Brady* letter, Chief Fallon placed the Plaintiff on paid leave and notified him that he was seeking his termination. RA III at 1117. The appointing authority, Mayor Curtatone, had a hearing held before an independent hearing officer. RA III at 1180-1181, 1190. The hearing officer recommended termination. RA III at 1190. The Mayor adopted the recommendation. *Id.*

The union appealed the termination, and the issue went before an arbitrator. RA III at 842. While the arbitration was ongoing, the Plaintiff filed this lawsuit. RA I at 22. The chronology of events was as follows.

On 9/29/16 the Plaintiff was placed on administrative leave by Chief Fallon after the MDAO informed him of the fact that the Plaintiff had withheld the information about his communications with Machado. RA II at 688.

On 3/17/17 the MDAO issued a *Brady* letter. RA III at 1075-1076.

On 5/31/17 Chief Fallon issued the Plaintiff a letter suspending him for five days and recommending his termination due to the issuance of the *Brady* letter for failure to disclose his communication with Machado. RA III at 1080.

7

On 7/9/17 the Somerville Police union president sent a letter to Chief Fallon, complaining that the department had not conducted a formal investigation.[4] RA III at 1082.

On 8/5/17 Chief Fallon directed Capt. Cotter conduct an internal investigation. RA II at 748.

On 10/26/17 and 11/27/17 the Plaintiff sent letters to Chief Fallon and Mayor Curtatone identifying what he called corruption and unethical behavior within the Department. RA II at 687, 745.

On 12/21/17 Capt. Cotter submitted his investigative report to Chief Fallon. RA II at 676.

On January 2, 2018, the City amended the administrative charges against DiFronzo to incorporate the findings of Cotter's investigation, but Chief Fallon's recommendation to terminate as based on the MDAO's investigation remained intact. RA II at 749.

---

[4] This letter also claims that a Grand Jury no billed an investigation into the Plaintiff. This is untrue. Contrary to the Plaintiff's multiple attempts to admit false testimony that he was the "sole target" of a Grand Jury Investigation; there was no Grand Jury investigation in which the Plaintiff was a target. RA I at 659, 742, 757.

Between 2/9/18 and 4/9/18, an administrative hearing,[5] was held by an independent hearing officer, Attorney Peter Berry, ultimately recommending termination of the Plaintiff in a detailed Civil Service Decision issued pursuant to M.G.L. c. 31, Section 41, citing, *inter alia*, violations for withholding evidence, untruthfulness, and conduct unbecoming an officer. RA IV at 1671.

On 5/8/18 Mayor Curtatone sent a letter to the Plaintiff formalizing his termination. RA II at 842.

On 10/19/18 arbitration hearings began and ran until 10/30/20. RA IV at 1361.

On March 26, 2021 the Plaintiff filed his complaint in this action, which has never been amended to add subsequent events. RA I at 20.

### Evidence Admitted at Trial of Facts Which Occured Subsequent to the Filing of the Complaint

On 6/4/21, Arbitrator Harvey Shrage issued an opinion upholding the period of leave without pay of over three years, but overturning the decision to terminate the Plaintiff's employment. The arbitrator ordered the City to reinstate the Plaintiff to his previous assignment as a detective. RA IV at 1361-1437.

---

[5] This hearing, conducted under G.L. c. 31 s. 41 can be conducted by the appointing authority, in this case Mayor Curtatone, or the appointing authority can designate an independent hearing officer to conduct the hearing and make a recommendation to the appointing authority.

The arbitrator concluded that it was "clear" from DiFronzo's "own description of [an alleged] phone call with Machado … that he knew that Machado was also looking for Alverez and that Machado expressed a desire to harm Alverez for taking his marijuana." Nonetheless, the arbitrator reinstated DiFronzo within thirty (30) days, or by July 4, 2021. RA IV at 1424, 1436-1437.

On 6/30/21, in response to the arbitrator's decision, MDAO issued an updated and stronger *Brady* letter noting that barring extraordinary circumstances, the Plaintiff would never be called as a witness by MDAO in any future cases.[6] RA IV at 1715.

On 7/7/21 Chief Femino, who is not a defendant in this action and is not named in the complaint, wrote to the Plaintiff and informed him that he was being placed on administrative leave with pay because of the new *Brady* letter. RA IV at 1535-1536.

In January of 2022, Mayor Curtatone's term as Mayor ended and Mayor Katyana Ballantyne ("Ballantyne") took office. The new Mayor, who is not a defendant in this action, chose to leave the Plaintiff on paid administrative leave as the decision about what the consequence of Plaintiff's actions were rested entirely with her.  RA I at 188.

---

[6] The Plaintiff continues to misleadingly note that he was called as a witness after the issuance of the *Brady* letters without issue, which is misleading, as he was only called once as a witness by the defense in a criminal case. RA 139, 431, 1290.

On February 16, 2023, Mayor Ballantyne sent a letter to the Plaintiff indicating that she had found that the Plaintiff could not perform his duties due to the second *Brady* letter and placed the Plaintiff on paid leave pending a hearing regarding discipline. He has been on paid leave since.[7] RA IV at 1715.

**B.    Motion for Summary Judgment Filed by the Defendants**

On January 24, 2023, the Defendant's filed a motion for summary judgment on all claims. RA I at 56. The Defendants noted in their memorandum that the complaint was never amended to include any claims relating to the City's decision to place the Plaintiff on paid administrative leave in July 2021, after the MDAO issued its revised *Brady* letter. RA I at 60, fn 2. The Defendants went on to note that because of the limited parameters of the Plaintiff's complaint, it would not be appropriate or their responsibility to recast the Plaintiff's claims and address any matters or facts which are outside of the allegations in the complaint. *Id.* At the time of the arbitration decision in June 2021, Chief Fallon and Captain Cotter had retired and the decision to place the Plaintiff on paid leave was made by a successor chief who was not a defendant and Mayor Curtatone left office in January 2022. *Id.*

---

[7] Mayor Ballantyne has made a decision to schedule a hearing with an independent hearing officer to determine if the Plaintiff should be terminated due to the new *Brady* letter.

On August 28, 2023, the Honorable C.J. Saylor issued his opinion on the Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56. RA I at 114-133.

In his factual findings, C.J. Saylor noted that he did not consider evidence concerning events *after* the filing of the complaint as the Plaintiff had not sought leave to supplement or amend the complaint. RA I at 115, fn 1.

The Plaintiff's complaint alleged the following claims:

(1)   A constitutional claim against the individual defendants brought pursuant to 42 U.S.C. Section 1983, alleging violations of "his property and liberty interests without due process of law" in violation of the First, Fifth, and Fourteenth Amendments

(2)   Claims for intentional interference with contractual relations and intentional interference with advantageous business relations against all defendants

(3)   A claim for intentional infliction of emotional distress against all defendants

(4)   Wrongful termination against all defendants

(5)   Negligent infliction of emotional distress against all defendants

(6)   Defamation and slander against Mayor Curtatone and Chief Fallon. RA I at 119-133.

In his decision, C.J. Saylor granted summary judgment to the Defendants as to the claims asserted under the Fifth and Fourteenth Amendments (Count I partial summary judgment), improper interference with a contractual relationship as to the Defendant City of Somerville and the Defendants in their official capacities (Count 2 partial summary judgment), improper interference with advantageous business

12

relationship as to the Defendant City of Somerville and the Defendants in their official capacities (Count 3 partial summary judgment), and intentional infliction of emotional distress against all Defendants (Count 4), negligent infliction of emotional distress against all Defendants (Count 6), and the defamation claim, against all defendants (Count 7). *Id.*

This left the First Amendment retaliation claim against all defendants; the interference claims against Mayor Curtatone, Chief Fallon, and Captain Cotter in their individual capacities; and the wrongful termination claim against all defendants. *Id.*

### Pre-Trial Filings

On November 1, 2023, the Defendants filed their pre-trial memorandum, noting that the relevant time period at issue at trial, based on the Plaintiff's pleading, is from when the Plaintiff was suspended to Mayor Curtatone's decision to terminate the Plaintiff's employment on the recommendation of the neutral hearing officer. RA I at 134-142.

The parties noted their agreement that the only remaining claims for trial were

> 1) a constitutional claim against the individual defendants alleging retaliation under the First Amendment;
>
> 2) a claim for intentional interference with contractual relations and intentional interference with advantageous business relations against the individual defendants in their individual capacities; and

13

3) a claim for wrongful termination in violation of public policy (Count V). RA I at 143.

During the hearing, the Defendants noted that they would move, as part of their pre-trial submissions, to limit the inquiry at trial to the Plaintiff's termination and that decision. RA I at 143-144.  Once again, the Defendants continued to be clear, as they have been throughout the litigation, that they were only litigating the claims in the complaint because they were not on notice of other claims.  *Id.*

On September 23, 2024, the Defendants filed their exhibit list, witness list, proposed voir dire questions, and motions in limine. RA I at168, 172, 174, 176, 182, 188.

The Defendants filed a "Motion in Limine to Exclude Evidence of the Arbitration Award" and a "Motion in limine to Exclude Evidence Regarding Employment Actions Taken by the Current Mayor Katjana Ballantyne and Other Allegations and incidents Unrelated to Plaintiff's Claims." RA I at 182, 188.

On October 4, 2024, the Court denied in part the Defendant's Motion in Limine "To Exclude Evidence of the Arbitration Award." RA I at 13.

On October 23, 2024, the Defendant's motion in limine to "Exclude Evidence Regarding Employment Actions Taken by Current Mayor Katjana Ballantyne and other Allegations and incidents Unrelated to Plaintiff's Claims" was docketed as determined to be moot and the court denied the motion without prejudice as the Plaintiff's noted they were not making claims related to any

14

actions taken during Mayor Ballantyne's mayorship and were not planning to call her as a witness. RA I at 15.

## C.    Additional Procedural History

On March 26, 2021, the Plaintiff filed their complaint in State Court. RA I at 20-40.

On July 9, 2021, the Defendants filed an answer. RA I at 42-53.

On May 25, 2021 a Notice of Removal was filed by the City of Somerville. Chief Justice Saylor set scheduling deadlines of November 8, 2021 for amended pleadings, January 24, 2022 for written discovery to be served and April 8, 2022 for depositions to be completed. The discovery deadline was later extended to July 8, 2022 and October 10, 2022 was set as the deadline for Rule 56 Motions. Discovery was once again extended to August 8, 2022 and the Rule 56 Motion filing deadline was extended to November 10, 2022. The Rule 56 Motion deadline was further extended to December 30, 2022 and again to January 16, 2023, January 23, 2023, and ultimately to January 24, 2023. RA I at 3-8, 54.

On January 24, 2023, the Defendants filed a Motion for Summary Judgment. On March 6, 2023, the Plaintiff filed an Opposition to the Defendants Motion for Summary Judgment. On March 14, 2023 a virtual hearing was held on the motion and on August 28, 2023, J. Saylor issued his opinion granting the motion on Count 1 as to the claims under the Fifth and Fourteenth Amendments, granting the motion

15

on Count 2 and 3 as to the City, Defendants Curtatone, Fallon, and Cotter in their official capacities, and granting the motion on Count 4, 6, and 7. The motion was denied as to the remaining counts and actions. RA I at 9-10.

On September 16, 2024, the Plaintiff filed his motions in limine, proposed jury instructions, proposed voir dire questions, and witness list. RA I at 12.

On September 23, 2024, the Defendants filed their exhibit list, witness list, proposed voir dire questions, and motions in limine. On September 30, 2024, the Plaintiff's filed responses to the Defendant's motions in limine. *Id.*

The Defendants also filed a Motion in Limine to Exclude Evidence of the Arbitration Award and a Motion in limine to Exclude Evidence Regarding Employment Actions Taken by the Current Mayor Katjana Ballantyne and Other Allegations and incidents Unrelated to Plaintiff's Claims. *Id.*

On October 4, 2024, the Court denied in part the Defendant's Motion in Limine "To Exclude Evidence of the Arbitration Award." RA I at 13.

On October 15, 2024, trial commenced. A jury was selected and openings were set for the following day. RA I at13.

On October 23, 2024 the Defendant's motion in limine to "Exclude Evidence Regarding Employment Actions Taken by Current Mayor Katjana Ballantyne and other Allegations and incidents Unrelated to Plaintiff's Claims" was determined to be moot and the court denied the motion without prejudice after

16

the Plaintiff's noted they were not making claims related to any actions taken during Mayor Ballantyne's mayorship and were not planning to call her as a witness. The Court also denied the Defendant's request to instruct the jury that lost wages cannot be considered as damages as the issue was decided at the arbitration. RA I at 15.

On October 23, 2024, the jury returned a verdict in favor of the Plaintiff. RA I at 15.

The jury found in favor of the Plaintiff on the First Amendment Retaliation Claim. RA I at 15.

The jury found in favor of the Defendants on the Tortious Interference with Contractual Relationship claim. RA I at 15.

The jury found in favor of the Plaintiff on the Tortious Interference with Advantageous Relationship claim. *Id.*

The jury awarded the Defendant $0 for lost compensation before July 2021. RA I at 252-253.

The jury awarded the Defendant $200,000 for lost compensation after July 2021. *Id.*

The jury awarded the Defendant $300,000 for emotional distress before July 2021. *Id.*

The jury awarded the Defendant $300,000 for emotional distress after July 2021. *Id.*

The jury awarded $0 in punitive damages for the First Amendment retaliation claim. *Id.*

## SUMMARY OF THE ARGUMENT

I. Plaintiff's complaint was expressly limited to the actions of Defendants Curtatone, Chief Fallon, and Captain Cotter during the period from the initiation of the Plaintiff's investigation into the February 24, 2015 stabbing of Henry Alvarez through Plaintiff's termination on May 8, 2018. RA I at 25–35; Appellant Br. at 15.

Despite this clear temporal and factual scope, the trial court erroneously permitted the introduction of evidence related to events that occurred well after the pleaded timeframe, including: the arbitration decision issued on June 4, 2021; a second Brady disclosure letter issued by the Middlesex District Attorney's Office on June 30, 2021; Plaintiff's placement on a second administrative leave by Chief Femino on July 1, 2021; and Mayor Ballantyne's February 16, 2022 decision to continue Plaintiff on administrative leave. *See* RA II at 686–87, 732–733; Appellant Br. at 15–16.

18

Worse still, the court instructed the jury that it could award damages based on two distinct time periods: before and after July 2021, the date of Plaintiff's second administrative leave. RA I at 254, 1310–1314; Appellant Br. at 15–16. The verdict form reinforced this improper expansion by inviting the jury to allocate damages by both time period and decision-maker. RA I at 254.

By allowing the jury to consider conduct and assess liability and damages based on events outside the scope of the complaint, the trial court committed legal error and violated the Defendants' fundamental due process rights. Reversal is required.

II. The district court erred in admitting the findings of fact and conclusions of law from an arbitration decision issued on June 4, 2021—months after the Plaintiff filed his complaint on March 26, 2021. RA I at 20. The complaint was never amended to include events post-dating its filing. In fact, the trial judge expressly acknowledged in his summary judgment ruling that he did not consider post-complaint evidence, as Plaintiff had not sought leave to amend to add those claims.  RA I at 115, fn.1. Despite this, the court allowed the arbitrator's decision—including the ultimate finding that Plaintiff was wrongfully terminated under a wholly distinct legal standard—to be presented to the jury. Appellant Br. at 27–

28. The arbitrator's opinion constituted inadmissible hearsay, impermissible expert opinion evidence, and was substantially more prejudicial than probative under Federal Rule of Evidence 403. The court also failed to consider the established factors governing the admissibility of arbitral decisions, compounding the error. *Id.*

Moreover, the court compounded this prejudicial error by instructing the jury that it could choose whether to adopt the arbitrator's findings. Appellant Br. at 27–28. This instruction improperly invaded the jury's exclusive role as factfinder and effectively endorsed the arbitrator's conclusions, allowing the jury to defer to findings made under a different legal framework without the safeguards of trial, including cross-examination.

The admission of the arbitration decision and the accompanying instruction to the jury resulted in unfair prejudice to the Defendants, undermined the integrity of the trial, and violated due process. The verdict should therefore be reversed or, at a minimum, the judgment vacated and a new trial ordered.

20

# ARGUMENT

**I.     THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER EVIDENCE AND AWARD DAMAGES BASED ON POST-JULY 1, 2021 CONDUCT BY MAYOR CURTATONE, MAYOR BALLANTYNE, AND CHIEF FEMINO, WHICH WAS OUTSIDE THE SCOPE OF THE COMPLAINT.**

The Plaintiff's complaint encompassed only the conduct of Defendants Mayor Curtatone, Chief Fallon, and Captain Cotter, beginning with the Plaintiff's investigation into the February 24, 2015 stabbing of Henry Alvarez and ending with his termination on May 8, 2018. RA I at 25–35. Despite this clear limitation, the trial court erroneously permitted the jury to consider evidence and assess liability under the theories of First Amendment retaliation and tortious interference with business or contractual relationships based on events that occurred well beyond the scope of the complaint—including the arbitration award dated June 4, 2021; the second *Brady* letter issued by the Middlesex District Attorney's Office on June 30, 2021; the Plaintiff's second administrative leave imposed by Chief Femino on July 1, 2021; and Mayor Ballantyne's February 16, 2022[8] decision to continue Plaintiff on administrative leave, where he remains to this day. RA II at 686–687, 732–733.

---

[8] In January of 2022, Mayor Curtatone's term ended and Mayor Katyana Ballantyne took office as the Mayor of Somerville.

At the charge conference, the trial judge acknowledged this issue but erred in his resolution. The jury was instructed that it could award liability and damages for events occurring after July 1, 2021, yet was told it could not assign liability to Defendants Fallon or Cotter for this period—despite the fact that the verdict slip did not provide a separate liability finding for that timeframe. RA I at 252; RA II at 1251, 1311. Further compounding the confusion, the judge instructed the jury that it could award damages for two separate periods—before and after July 2021— even though Fallon and Cotter had retired before that date. RA I at 254; RA II at 1310–1314. Nevertheless, the verdict form required the jury to assign liability to those defendants for conduct that occurred after their retirement, which was both factually and legally impossible. RA I at 254; RA III at 1311. Similarly, while Mayor Curtatone's term ended in January 2022, the jury was permitted to award damages for a leave decision made by a different mayor after that date. RA II at 443.

Permitting the jury to hear evidence and award liability and damages for conduct occurring outside the pleadings constituted clear, reversible error. Plaintiff made a deliberate and strategic decision not to assert claims or seek damages for any conduct occurring after his termination on May 8, 2018. That decision was reinforced by the trial court's own recognition, at the summary judgment stage,

that the complaint contained no allegations relating to events beyond that date. RA I at 115.

The admission of such evidence prejudiced Defendants and violated their due process rights. This error is structural in nature and warrants automatic reversal and alternatively, even under a harmless error analysis, reversal is required. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Police Chief Femino and Mayor Ballantyne, who were not parties to this litigation, were effectively placed on trial without any opportunity to defend their actions taken after July 1, 2021. The jury was permitted to render judgment based on their decisions to suspend the Plaintiff, despite the fact that these individuals were not named in the complaint, had no notice of the claims against them, did not appear at trial, and were denied the opportunity to file responsive pleadings, present evidence, conduct discovery, or assert legal defenses. Put differently, the named Defendants were held liable for the actions of their successors; individuals whose decisions they did not control and against whom they had no ability to defend. Mayor Curtatone was held liable for a decision made by his successor without any evidence as to how that decision was made.

This deprivation stripped the Defendants of their fundamental right to respond to the claims, including the ability to file an answer or motion to dismiss, a

23

core component of procedural due process in civil litigation. *See Peralta*, 485 U.S. at 80. The Supreme Court in *Peralta* held that entering a default judgment against a defendant who was not properly served—and thus was denied the opportunity to respond—violates due process, regardless of whether the defendant had a meritorious defense, because such deprivation may affect the outcome. *Id.* at 80-84. The Court emphasized that the Due Process Clause guarantees the right to be heard "at a meaningful time and in a meaningful manner." *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Even if the defendant might ultimately lose on the merits, the absence of notice and opportunity to respond renders the judgment void. *Id.*

The Defendants were never put on notice of the claims against them, which deprived them of the opportunity to conduct discovery, an essential component of a fair adjudicatory process in civil litigation. When a party is denied the chance to obtain relevant information through discovery, particularly without adequate notice or justification, such deprivation may constitute a due process violation. *See Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186 (1st Cir. 1989). Although discovery denials are generally reviewed for manifest injustice, here no discovery was conducted as to post-July 1, 2021 claims or defendants because the complaint did not include those allegations.

24

Blindsided by new claims first made during the trial, the Defendants' ability to present evidence and defenses was severely hindered. *See Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (due process requires notice and opportunity for "some kind of hearing" prior to deprivation of liberty or property); *Herwins v. City of Revere*, 163 F.3d 15 (1st Cir. 1998) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)) (due process protection applies even where the property interest is minimal). When a court enters judgment without allowing a party to submit documentary evidence or call witnesses, the judgment may be unconstitutional. *Id.* In *Goldberg*, the Supreme Court held that welfare recipients facing termination must be allowed to present evidence and confront adverse witnesses. *Goldberg* at 270. Although *Goldberg* involved an administrative proceeding, its fundamental principle—that the opportunity to present evidence is a "fundamental requirement of due process"—applies broadly. *Id*. In civil trials, denying a party the ability to be heard—whether by refusing a hearing or excluding witnesses without justification—can render the entire proceeding structurally defective and require automatic reversal.

Defendants were deprived of the ability to assert defenses, litigate their case, and receive a fair adjudication which are basic guarantees of due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("there can be no doubt that at a minimum they require that a deprivation of life, liberty or

25

property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case"). Courts that deny a party the opportunity to raise affirmative defenses or contest liability violate the Due Process Clause. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). In *Logan*, the Supreme Court held that a procedural defect that prevented a plaintiff's claim from being heard constituted a due process violation, explaining that the right to pursue legal claims and defenses is "a species of property protected by the Due Process Clause." *Id.* at 428. When a defendant is denied the chance to raise statutory, constitutional, or factual defenses due to lack of notice or improper procedure, the entire process is tainted, constituting structural error that undermines the fairness and legitimacy of the judgment.

### a. The issue was not tried by consent under Fed. R. Civ. P. 15(b)(2)

There was no express or implied consent to the trial of unpleaded issues in this case, as the Defendants repeatedly and consistently objected to the admission of evidence and argument concerning post-July 2021 conduct, both before and during trial.

Federal Rule of Civil Procedure 15(b) permits an unpleaded claim to be treated as if it were pleaded only when the parties' conduct demonstrates their express or implied consent to litigate that claim. *See In re Crawford*, 841 F.3d 1 (1st Cir. 2016) (quoting *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 319 (1st

26

Cir. 2012)). There is no suggestion of express consent in this case, and thus any assertion of consent must rest solely on the theory of implied consent.

Implied consent may arise in two limited circumstances; when a party engages with a new claim as though it had been properly pleaded, either through direct litigation of the issue or through silent acquiescence, or (2) when a party fails to object to the introduction of evidence that is relevant only to the unpleaded claim. *Rodríguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995); *In re Crawford*, 841 F.3d at 4. However, implied consent cannot be found where the adverse party objects to the introduction of such evidence. *See Eller v. Trans Union, LLC*, 739 F.3d 467 (10th Cir. 2013) ("When a party objects to the introduction of evidence on the ground that it is not relevant to the pleaded issues, there can be no implied consent under Rule 15(b).").

Here, the Defendants clearly and consistently objected to the litigation of post-July 2021 conduct. In their January 24, 2023 motion for summary judgment, Defendants explicitly noted that the complaint had never been amended to include any claims relating to the City's decision to place Plaintiff on administrative leave in July 2021 after MDAO issued a revised *Brady* letter. RA I at 56, 60 fn.2. They stated unequivocally that they were not addressing claims from this period because those claims were not part of the case. *Id.* The court acknowledged and accepted this position, expressly excluding post-complaint events from consideration, "as

27

plaintiff has not sought leave to supplement or amend the complaint." *See* RA I at 115 n.1.

Because Plaintiff never amended his complaint to include post-July 2021 conduct, Defendants were denied the opportunity to challenge such claims under Rule 56, to conduct discovery, or to raise applicable defenses. They could not reasonably be deemed to have consented to litigation of claims they had no meaningful opportunity to oppose.

Defendants again raised the issue pretrial. On September 23, 2024, they filed motions in limine, including a "Motion in Limine to Exclude Evidence of the Arbitration Award" and a "Motion in Limine to Exclude Evidence Regarding Employment Actions Taken by the Current Mayor Katjana Ballantyne and Other Allegations and Incidents Unrelated to Plaintiff's Claims." RA I at 118. These motions reiterated Defendants' consistent position that post-complaint conduct was outside the scope of the case.

In light of these repeated objections, there can be no finding of implied consent under Rule 15(b), and the admission of claims and evidence beyond the pleadings was prejudicial and legally improper.

On October 4, 2024, the district court denied in part the Defendants' "Motion in Limine to Exclude Evidence of the Arbitration Award."  RA I at 13. Then, on October 23, 2024, the day of the jury verdict, the court denied without

prejudice the Defendants' "Motion in Limine to Exclude Evidence Regarding Employment Actions Taken by Mayor Katjana Ballantyne and Other Unrelated Allegations" as the court deemed the motion moot based on Plaintiff's representation that he was not asserting claims based on actions taken during Mayor Ballantyne's term and did not intend to call her as a witness. RA I at 15, 188.

However, despite these assurances, the Plaintiff repeatedly introduced evidence and argument concerning post-complaint events, particularly his administrative leave beginning in July 2021, which was ordered by non-party officials. After jury instructions were delivered, Defendants renewed their objections, specifically challenging the instructions on future damages and damages related to Plaintiff's second administrative leave, referred to as "the 2021 decision." RA III at 1316.

Earlier, the court had partially granted Defendants' motion to exclude the arbitration decision by ruling that the decision itself could not be introduced into evidence. RA I at 418–419. Nonetheless, on the first day of trial, Plaintiff again sought to introduce post-arbitration events and decisions made by non-party officials. Plaintiff stated:

> Judge, I want to be able to use information relative to my client's status, post-arbitration decision, and I'm aware what the Court's ruling was, but part of what we're saying in our argument is that they have used this Brady letter as a pretext for the purposes of preventing him from being fully

29

reinstated. … Then the arbitrator writes his decision. That takes a lengthy period of time, and then in July or June, early July of 2021, he's ordered to be put back in the department. He is then once again put on administrative leave with pay, and that's where he's been for the past three years. So that's his status, Judge, as I say here today. *See* RA II at 430–431.

Defense counsel objected, expressly stating that this line of argument was the subject of their motions in limine:

Your Honor, this is exactly the topic of our motions in limine. … This has nothing to do with the defendant. The plaintiff has never amended his complaint to add that as an issue. … The decision-makers currently are totally different. There is no allegation, they never amended to add -- this thing has never been discovered as to why he's still on leave, and we have a new mayor. This is exactly what we raised in our motion in limine that they couldn't get into it. *See* RA II at 432.

Defense counsel continued to object, emphasizing that Plaintiff's complaint never included claims against the current mayor or police chief:

So that's the problem … they did not amend their complaint to say that the second decision of Mayor Ballantyne is somehow doing things because she was violating his First Amendment rights and a new police chief. These are the people making the decisions now. That's not part of this case. *See* RA II at 443.

Despite the court's initial rulings and Plaintiff's representations, the trial ultimately included evidence and argument concerning claims never pleaded and never subject to discovery, motion practice, or formal amendment—resulting in the trial of unpleaded claims without the Defendants' consent and over their repeated objection.

The issue again arose during the charge conference, where Defendants reiterated their objection to the admission of evidence and claims arising from post-July 2021 conduct. Defense counsel stated:

> And I repeat my argument that that's a different decision. Remember, the decision to put him on leave, not to put him back to full employment after he was reinstated, was a different decision based on different facts and a different Brady letter and different police chief, and it's not part of the complaint. It was never discovered. It was never put into issue that now we have that decision was bad. The plaintiff was free to amend when it happened, which is the usual course. To say now that decision also is retaliatory, Chief Fallon was retired by then. RA at III 1228.

Despite these objections, the court permitted the jury to consider liability and damages stemming from the 2021 administrative leave decision, an action taken by non-party officials who were not named in the complaint and who were not subject to discovery, cross-examination, or responsive pleading. In the final jury instructions, Chief Judge Saylor acknowledged that different individuals made the 2021 decision and that Defendants Fallon and Cotter had retired by that time. Nevertheless, he allowed the jury to award damages based on this period, stating:

> This case involves different employment decisions by different actors at different times—in particular, the 2017 decision to place the plaintiff on administrative leave with pay, the 2018 decision to terminate him, and the 2021 decision to place the plaintiff on administrative leave with pay after the arbitrator's decision. By 2021, defendants Bernard Cotter and David Fallon had retired from the police department, and, therefore, they did not participate in the 2021 decision[9].... If you decide to award damages based on

[9] While Mayor Curtatone was still Mayor, Chief Femino placed the Plaintiff on leave and it was the decision of New Mayor Ballantyne to keep the Plaintiff on leave after Mayor Curtatone left office in January of 2022.

31

the 2021 decision—for example, lost compensation from 2021 to today—you cannot find defendants Cotter and Fallon liable for those damages... Again, I've broken this down for things before 2021 and things after 2021 because there were different decision-makers. RA III at 1310–1314.

The court itself expressed concern about allowing evidence outside the scope of the complaint and acknowledged the lack of clarity in the pleadings:

> *...among the advantages of doing it this way, if for some reason I conclude or an appellate court concludes that it was wrong to have anything after July 2021*, we will have a record of what the jury's verdict was, so it's cumbersome, but I think under the circumstances, it's appropriate since we did have different decision-makers in 2021. It is true, as Mr. Kesten has pointed out, that this detail wasn't in the complaint, but it's also hard to parse out exactly, for example, what the mayor's conduct or reasoning, intent was, and I'm going to approach it this way because I need to make a decision, and that's the decision. RA III at 1251 (emphasis added).

The court further recognized that its decision might prove erroneous on appeal and attempted to structure the verdict form accordingly:

"And, again, this is cumbersome, but—well, again, I think it's appropriate under the circumstances, and *I'm leaving myself and the appellate court an out in case this proves to be incorrect, that is, nothing from 2021 forward should be in play.*" RA III at 1252–1253 (emphasis added).

Despite the court's acknowledgment that the post-2021 claims were not pleaded, had not been the subject of discovery, and involved different actors not before the court, it nonetheless allowed the jury to hear the evidence from the Plaintiff and award damages for that period. This was clear error. The Defendants did not consent, expressly or impliedly, to litigation of these issues. The court's

32

own uncertainty as to the legal basis for including them only underscores the impropriety of doing so. As a result, the Defendants were denied due process, and the judgment must be vacated.

> **b.** **The Defendants did not have an opportunity to conduct discovery, engage in motion practice, or otherwise litigate the claims for causes of action after July 2021 and were prejudiced by their admission.**

The Defendants were not afforded an opportunity to conduct discovery, engage in motion practice, or otherwise litigate claims arising from events that occurred after July 2021, and were substantially prejudiced by the admission of those claims into evidence. *See Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76 (1st Cir. 2008). The proper defendants for any post-July 2021 conduct were not named in the complaint and thus had no opportunity to respond or present a defense. Simultaneously, the named Defendants, who were not the relevant decisionmakers during that period, were unable to adequately defend against these allegations, as the claims were neither pleaded nor properly litigated.

As the First Circuit has emphasized, "the fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Ruiz Rivera*, 521 F.3d at 84 (quoting *Rodríguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995). "It would not serve the interests of justice for instance, to redeem a totally unpleaded, unlitigated claim in circumstances that threaten significant prejudice to

33

a defendant." *Id.* While complaints may, in some cases, be constructively amended through the conduct of litigation, the First Circuit has made clear that "this principle cannot mean that plaintiffs may leave defendants to forage in forests of facts, searching at their peril for every legal theory that a court may someday find lurking in the penumbra of the record." *Id.* at 1172.

Here, Plaintiff never even sought leave to amend his complaint, either before or during trial, likely because any such motion would have been denied as untimely. As a result, Defendants were forced to try a case in which they were not only "foraging in forests of facts," but doing so in the dark, unaware of the claims they were expected to defend against. Despite Defendants repeatedly raising this concern, Plaintiff continued to represent that post-2021 conduct was not at issue, only to later seek submission of those claims to the jury. This tactic compounded the unfairness and deprived Defendants of the fundamental procedural protections guaranteed by the Due Process Clause.

34

**II.  THE JURY VERDICT AND JUDGMENT MUST BE VACATED DUE TO THE ERRONEOUS ADMISSION—OVER OBJECTION—OF AN ARBITRATOR'S OPINION ISSUED YEARS AFTER THE OPERATIVE FACTS PLEADED, WHICH CONSTITUTED INADMISSIBLE HEARSAY, IMPROPER EXPERT TESTIMONY, AND WAS MORE PREJUDICIAL THAN PROBATIVE; EVEN IF ADMISSIBLE, THE COURT FAILED TO APPLY THE REQUIRED DISCRETIONARY FACTORS, AND THE EVIDENCE IMPROPERLY SUPPLANTED THE JURY'S ROLE AS FACTFINDER.**

The admission of the arbitrator's findings of fact and conclusions of law is reviewed under the abuse of discretion standard, and the resulting verdict should be overturned, or alternatively, the judgment vacated. *See Ramirez v. Debs Elias*, 407 F.3d 444, 449 (1st Cir. 2005); *see also United States v. Occhiuto*, 784 F.3d 862, 867 (1st Cir. 2015). An abuse of discretion occurs when "a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them," including by committing an error of law. *Lech v. von Goeler*, 92 F.4th 56, 63 (1st Cir. 2024) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 83 (1st Cir. 1998)). If the ruling is erroneous and it is highly probable that it affected the outcome of the trial, the verdict must be disturbed. *McDonough v. City of Quincy*, 452 F.3d 8, 19–20 (1st Cir. 2006).

Here, the trial court's decision to admit the arbitrator's findings and conclusions, combined with an erroneous jury instruction, constituted legal error that materially affected the outcome.

The questionable admissibility of an arbitrator's decision at trial stems from the Supreme Court's decision in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), where the Court held that an arbitration decision should not be given preclusive effect. In dicta, however, the Court stated that "the arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Id.* at 60. The Court further explained in footnote 21—commonly referred to as the *Gardner-Denver* factors—that a trial court may consider: "the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators." *Id.* at 60 n.21.

The context of *Gardner-Denver* is essential. At the time, Title VII claims were not subject to jury trial. Thus, the Court was not grappling with the implications of the Federal Rules of Evidence, nor with the risk of undue prejudice and confusion before a jury. Revisiting that decision today, in the context of a jury trial governed by modern evidentiary rules, may well yield a different result.

That said, this case does not require a change in law. Under existing law, the arbitrator's decision should not have been admitted. The trial court failed to apply the *Gardner-Denver* factors, admitted evidence that constituted inadmissible hearsay and improper expert opinion, and permitted the jury to rely on the

36

arbitrator's findings in lieu of its own factfinding function, all of which demands reversal.

### a.    Hearsay Fed. R. Evid. 801

The Plaintiff admitted statements during the arbitration that did not fall within any hearsay exception, including multiple levels of hearsay regarding the discipline of other officers.

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. *Vasquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Such evidence is generally inadmissible at trial unless it falls within a recognized exception under Federal Rule of Evidence 801. *See Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 76 (1st Cir. 2005); *see also Hayes v. Town of Dalton*, 2025 WL 918684 (D. Mass. 2025).

Here, Plaintiff's counsel had the Plaintiff read directly from the arbitrator's decision, including findings on the Plaintiff's veracity and the wrongful nature of his termination. RA II at 682–683, 724. Counsel also emphasized the arbitrator's authority by noting he was jointly selected by both parties. RA II at 685, 724–726. The Plaintiff testified, "as far as the arbitration is concerned, my understanding of just cause, the arbitrator determined…that the city didn't have just cause to terminate me…wrongful termination." RA II at 683. Counsel reiterated the arbitrator's findings multiple times. RA II at 683–684. Over objection, the Plaintiff

37

was allowed to testify that the arbitrator found that he did not deliberately withhold information. RA II at 724.

Additionally, the Plaintiff introduced comparator discipline exclusively through hearsay. RA II at 726–727. Although this is not a discrimination or equal protection case, making comparators of questionable relevance, the manner of introduction here was improper hearsay that prejudiced the jury. The Plaintiff testified about other officers' discipline and investigations solely based on the arbitration record, much of which was itself hearsay drawn from the Berry report. RA II at 726–727. The Plaintiff's knowledge of these incidents came exclusively through the city hearing and arbitration, creating multiple layers of hearsay.

Moreover, Plaintiff's counsel elicited testimony about an affidavit related to an investigation of Officer Kiely without context or foundational proof regarding the affidavit's origins. Specifically, the Plaintiff was asked if there was "testimony at the previous hearing(s)" about a report filed regarding Officer Kiely's investigation. RA II at 727–728. The Plaintiff testified that an affidavit submitted at arbitration stated the report did not exist, implying internal Department misconduct. *Id.*

Finally, the Plaintiff was permitted to question other witnesses about comparators cited by the arbitrator from the administrative hearing report. Most of this testimony was hearsay, as the witnesses lacked first-hand knowledge and

learned of the incidents only through the arbitration process. RA II at 709–711, 726–727, 983–984.

### b.   The Arbitration Decision Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury and Should have Been Excluded Under Fed. R. Evid. 403

The Court erred in admitting the arbitrator's decision, as it unfairly prejudiced the Defendants by inviting the jury to give it undue weight.

Under *Federal Rule of Evidence 403*, even relevant evidence is inadmissible where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See also Lobster 207, LLC v. Pettegrow*, 2024 WL 4826885 (D. Me. 2024) (excluding arbitration award due to Rule 403 concerns, noting that instructing a jury on how to weigh the award would "result in a trial within a trial concerning the qualities of the arbitration process" and confuse the jury).

In a similar case, argued by the same counsel representing the Plaintiff here, an arbitration decision in which an arbitrator found that police officers' terminations were warranted was excluded because it "addresses questions that are at the core of [the] case and there is a risk that a jury would afford the arbitrator's decision undue weight." *Hayes v. Town of Dalton*, 2025 WL 918684 (D. Mass. Mar. 25, 2025). *See also Moore v. Sequeira*, 2024 WL 1013301, at \*5 (D. Conn.

39

Mar. 8, 2024) (excluding arbitration decision under Rule 403 where "the allure of a prior expert adjudication [may] be strong for a jury").

Arbitration decisions, such as the one at issue here, typically occur after the employee's termination and are based on non-constitutional considerations. In wrongful termination cases, their limited probative value is often outweighed by the risk of prejudice and confusion. For example, in *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 989 (N.D. Iowa 2007), the court excluded evidence of an arbitration decision finding no discrimination under a collective bargaining agreement, reasoning that its probative value was minimal and substantially outweighed by the risk of unfair prejudice, misleading the jury, and undue delay. The court noted that the arbitration occurred after the termination, and the arbitrator's conclusion did not independently support the employer's asserted lawful reason for discharge. *Id.*

The same reasoning applies here. The arbitrator's opinion, issued years after the operative facts in the complaint, invited the jury to substitute his legal and factual conclusions for their own. It became a surrogate for the jury's role as factfinder, and its admission was both confusing and unduly prejudicial. The judgment should therefore be vacated.

40

### c.    Jury Instruction on Arbitration Decision was Misleading and Incorrect as a Matter of Law

A new trial must be granted where a jury instruction is (1) misleading, unduly confusing, or incorrect as a matter of law, and (2) not harmless, in that it likely affected the jury's verdict or the substantial rights of the objecting party. *Davignon v. Clemmey*, 322 F.3d 1, 9 (1st Cir. 2003) (quoting *Romano v. U-Haul Int'l*, 233 F.3d 655, 665 (1st Cir. 2000)).

Here, the trial court issued a jury instruction regarding the arbitration decision during the testimony of the Defendants' first witness. The instruction stated, in part:

> ...The arbitrator made his decision that is being appealed, so it's not yet final, but you're hearing about the arbitration because you need to know about it, kind of what happened, the basic framework, what happened and when and what the ultimate decision was... The arbitrator made a decision under the collective bargaining agreement. You are being asked to make a somewhat different decision or set of decisions... Your decision could align with the arbitrator, or it could be completely different, or it could be different in part. It's totally up to you, but you should not assume that the arbitrator got it right... You are to make your own separate and independent decision. RA II at 684–685.

This instruction was legally flawed in multiple respects.

First, it misstates the jury's role. The jury was not being asked to decide whether they agreed with the arbitrator or to evaluate the correctness of his decision. Rather, the jury's task was to determine whether the Defendants violated the Plaintiff's constitutional rights, specifically under a *preponderance of the*

*evidence* standard, and whether the termination was motivated by protected speech. These are wholly different legal questions from the arbitrator's task of determining whether there was "just cause" under a collective bargaining agreement—a contractual standard governed by labor law, not constitutional tort principles. *See, e.g.*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974) (distinguishing arbitration proceedings under a CBA from Title VII and constitutional claims).

Second, the instruction improperly invited the jury to rely on or defer to the arbitrator's findings, effectively elevating his opinion into a quasi-expert or quasi-judicial determination. Despite the judge's cautionary language that the arbitrator's decision was not controlling, the instruction as a whole encouraged the jury to "align" with the arbitrator, creating a serious risk that the jurors would substitute the arbitrator's findings for their own.

Defense counsel immediately objected to the instruction and requested clarification, noting that the jury's task was not to decide whether the arbitrator was correct, but to determine whether the Plaintiff's termination was in retaliation for protected speech. RA II at 697. This concern was later validated when the jury submitted a question during deliberations asking, "Are we expected to complete the dollar amount for damages?" RA II at 1325. This inquiry reflects fundamental confusion about the jury's role, likely influenced by the judge's instruction implying that some of the decision-making might already have been done.

42

Furthermore, the judge's failure to clearly explain the legal distinction between the arbitration decision and the constitutional claims at issue misled the jury about the relevant standard of proof and the elements of the causes of action. As a result, the jury may have erroneously believed that its role was to affirm or reject the arbitrator's conclusion, rather than independently evaluate whether the Defendants' conduct violated federal law.

Finally, this was not harmless error. The arbitration findings were repeatedly referenced throughout trial, and the Plaintiff was allowed to read portions of the decision into evidence. The jury was instructed that it could align with those findings. The improper instruction thus materially tainted the jury's deliberative process and undermined the Defendants' right to a fair trial.

Because the jury instruction was misleading, incorrect as a matter of law, and prejudicial, a new trial is warranted. *See Davignon*, 322 F.3d at 10 (new trial required where instructions misled jury on key legal issue and prejudiced party's substantial rights).

## III. THE DENIAL OF THE DEFENDANT'S MOTION FOR A NEW TRIAL WAS AN ABUSE OF DISCRETION

The trial court erred in denying the Defendants' motion for a new trial, which was based on the improper admission of the arbitrator's decision, the introduction of evidence and damages beyond the scope of the complaint, and a verdict rendered in contradiction to the weight of the evidence. RA I at 256–271.

43

A motion for a new trial should be granted where the verdict is "against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 14 (1st Cir. 2002). *See also Interstate Litho Corp. v. Brown*, 255 F.3d 19, 29 (1st Cir. 2001) ("A new trial is warranted when the jury's verdict is so seriously mistaken, so clearly against the law or evidence, as to constitute a miscarriage of justice.").

Following the jury's verdict, the Defendants filed a "Motion for Judgment as a Matter of Law, or in the Alternative, a Motion for a New Trial," raising the same core issues outlined in this brief—namely, that the Court erred in admitting evidence and awarding damages based on facts and claims not pleaded in the complaint, and in allowing the jury to consider and give weight to the arbitrator's decision and findings. RA I at 258–271. The trial court denied the motion. RA I at 287.

While the Defendants do not restate every argument already presented, they emphasize that the cumulative effect of the Court's rulings—particularly the admission of the arbitration decision, jury instructions that mischaracterized the legal issues, and the expansion of liability and damages beyond the scope of the complaint—deprived the Defendants of a fair trial and violated fundamental due process principles.

44

The jury was asked to consider evidence and award damages related to events not pled, against individuals not named as defendants, and arising from decisions made by individuals with no opportunity to present a defense. In addition, the undue weight afforded to the arbitrator's findings, through both testimony and jury instruction, invited the jury to substitute the arbitrator's judgment for its own, undermining the fairness of the proceeding.

These cumulative errors substantially prejudiced the Defendants and rendered the verdict fundamentally unjust. The trial court's refusal to grant a new trial, under these circumstances, constituted an abuse of discretion and should be reversed.

## CONCLUSION

For the foregoing reasons, the Defendant-Appellants, respectfully request that this Honorable Court vacate the verdict and order a new trial.

Respectfully submitted,

/s/ *Leonard H. Kesten*

Leonard H. Kesten, 1st Circuit Bar #36865
Alexander Kesten
Michael V. Glennon, 1st Circuit Bar #1215864
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
lkesten@bhpklaw.com
akesten@bhpklaw.com
mglennon@bhpklaw.com

Dated: September 29, 2025

45

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,353 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.    This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman type.

/s/ *Leonard H. Kesten*
Leonard H. Kesten, 1st Circuit Bar #36865
Alexander Kesten
Michael V. Glennon, 1st Circuit Bar #1215864
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
lkesten@bhpklaw.com
akesten@bhpklaw.com
mglennon@bhpklaw.com

Dated: September 29, 2025

46

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2025 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

/s/ *Leonard H. Kesten*

Leonard H. Kesten, 1st Circuit Bar #36865
Alexander Kesten
Michael V. Glennon, 1st Circuit Bar #1215864
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
lkesten@bhpklaw.com
akesten@bhpklaw.com
mglennon@bhpklaw.com

47

# ADDENDUM

**ADDENDUM**
**TABLE OF CONTENTS**

Final Judgment ........................................................................................................Add. 1

i

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANTE A. DIFRONZO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-10867-FDS |
| CITY OF SOMERVILLE, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## FINAL JUDGMENT

**SAYLOR, C.J.**

In accordance with plaintiff's stipulation of voluntary dismissal of his wrongful termination claim made October 17, 2024 (ECF 101 at 6), the Jury Verdict returned on October 23, 2024 (ECF 99), the Memorandum and Order on Defendant's Motion for Judgment as a Matter of Law or for a New Trial filed January 16, 2025 (ECF 111), and the Memorandum and Order on Pre-Judgment Interest Rate filed January 30, 2025 (ECF 112), It Is Hereby ORDERED, AJUDGED, And DECREED that:

1. Judgment is entered for Plaintiff Dante A. DiFronzo against Defendants Joseph Curtatone, David Fallon, and Bernard Cotter, jointly and severally, in the amount of $300,000.00.

2. Pre-judgment interest in the amount of $138,772.60 is awarded for Plaintiff Dante A. DiFronzo and against Defendants Curtatone, Fallon, and Cotter, jointly and severally. A simple pre-judgment interest rate of 12 percent per annum applies, beginning on March 26, 2021, the day this action was commenced.

Add. 1

3.  Judgment is entered for Plaintiff Dante A. DiFronzo against Defendant Joseph Curtatone in the amount of $500,000.00.

4.  Pre-judgment interest in the amount of $231,287.67 is awarded for Plaintiff Dante A. DiFronzo and against Defendant Curtatone.  A simple pre-judgment interest rate of 12 percent per annum applies, beginning on March 26, 2021, the day this action was commenced.

5.  All claims against the City of Somerville are dismissed with prejudice.

BY THE COURT,
***Barbara I. Beatty***
Deputy Clerk

DATED:  January 31, 2025

Add. 2